**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2012 JUL 31  AM 10: 11

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
                    DEPUTY

LAUREN WILLIAMS,

                              **Plaintiff,**

-vs-                                                    **Case No.  A-11-CA-409-SS**

**NORTH AMERICAN VAN LINES OF TEXAS,**
**INC. and NORTH AMERICAN VAN LINES,**
**INC.,**

                              **Defendants.**

---

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants North American Van Lines of Texas, Inc. and North American Van Lines, Inc. (collectively, NAVL)'s Motion for Summary Judgment [#23], Plaintiff Lauren Williams's Response [#24] thereto, and NAVL's Reply [#25], and Williams's Letter Brief dated July 27, 2012. Having considered the documents, the file as a whole, and the relevant law, the Court now enters the following opinion and orders denying the motion.

## Background

This is a Carmack Amendment case, arising out of a shipment of personal property gone horribly wrong, and the resulting dispute between the shipper, Williams, and the carrier, NAVL, over the amount of compensation she is owed for undisputedly substantial damages to, and outright loss of, Williams's property.

In July 2010, Williams contracted with NAVL to have her personal property packed and transported from New York, New York to Austin, Texas.  The contract called for delivery of the

goods between August 4 and 11, 2010. Shipment of Williams's property was considerably delayed; it was apparently stranded for some time at a facility in New York, and although the goods were packed and loaded by July 22, they were not delivered until August 18. However, this turned out to be a minor problem, compared to what became immediately apparent upon delivery: widespread, serious damage of numerous items, with cardboard boxes arriving caved in and crushed. Other items never arrived, and apparently have never been found. Valuable furniture was badly damaged. Although NAVL disputes whether it caused the damage to some items, particularly to certain electronics, it has admitted to damaging a great many other pieces of Williams's property. NAVL's own employees have admitted this damage was severe, and among the worst they had ever seen.

Although the parties dispute precisely what was offered and agreed while negotiating the contract, the agree the issue was broached of what value to declare for the goods, and what level of coverage or insurance would be available. Williams claims she informed NAVL her possessions were worth more than $200,000, but that NAVL claimed neither value coverage, nor insurance, was available in that amount. Williams further claims she was offered only a $100,000 "maximum value plan" (MVP). By contrast, NAVL claims it offered her (1) a base tariff coverage value of sixty cents per pound, (2) an elevated tariff coverage of $6 per pound (which apparently amounted to $35,000), and (3) the MVP amount of $100,000. NAVL claims Williams never informed it of her belief that her goods were worth $200,000, nor ever requested any amount of coverage greater than $100,000.

NAVL points to several pieces of evidence which comport with a $100,000 valuation. For example, the "Binding Estimate" which was given to Williams had a line item for the MVP of $100,000. Defs.' Mot. Summ. J. [#23-7], Ex. 20 at 1. Moreover, Williams herself signed the bill of lading. The bill of lading had two options under a section labeled "Shipper's Declaration of

Value." *See id.*, [#23-8], Prod. Resp. at 1.  "Option 2" represented a tariff rate of sixty cents per pound.  Williams left this option blank.  "Option 1" allowed the shipper to declare either a "lump sum dollar amount . . . not less than $5000," or "an amount per pound not less than $6.00 per pound, whichever is greater."  *Id.*  On the bill of lading, the corresponding blanks for Option 1 are filled in, designating a value of  "one hundred thousand," and Williams initialed the line for a $500 deductible.  *Id.*

However, Williams notes she also filled out a "High Value Inventory" form (used for listing articles whose value exceeds $100 per pound), which indicated several pieces of art, standing alone, were worth an estimated $100,000.  *See id.* [#23-11], Ex. 2 at 1.  Williams argues her goods were therefore obviously worth more than $100,000.

NAVL apparently offered less than $17,000 in compensation, based on (1) assertions it did not damage certain items, (2) assertions it could not establish the value of others, and (3) a restoration estimate of other items, provided by a third-party restoration company, Lone Star Restoration.

The Court previously granted NAVL's motion to dismiss Williams's original petition (which stated claims under state law), but allowed Williams leave to file an amended complaint under the Carmack Amendment.  Order of Oct. 13, 2011 [#9] at 3.  Williams has done so.

Presently, NAVL has moved for summary judgment.  The motion argues NAVL is entitled (1) to full summary judgment, because Williams failed to file a proper written claim, under the Carmack Amendment and its attendant regulations and, alternatively, (2) to partial summary judgment limiting any recovery by Williams to the declared value of the shipment, $100,000.

**Discussion**

I.      **Summary Judgment—Legal Standard**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Summary Judgment—Application

The Court will first address the motion for full summary judgment, before turning to the alternative request for partial summary judgment.

## A.    Failure to File Claim Form

The Carmack Amendment authorizes interstate carriers to limit the period for filing cargo claims to a minimum of nine months after the shipper learns of a potential claim, by filing an appropriate tariff, and by specifying the limited period by rule or contract.[1] 49 U.S.C. § 14706(e); *Salzstein v. Bekins Van Lines Inc.*, 993 F.2d 1187, 1189 (5th Cir. 1993). Within that nine-month period (assuming, as here, the carrier has opted for the statutory minimum), a shipper must file a valid cargo claim under § 14706 in order to recover. *See* 49 C.F.R. § 1005.2(b); *Landess v. N. Am. Van Lines, Inc.*, 977 F. Supp. 1274, 1280 (E.D. Tex. 1997). To do so, the shipper must provide a

---

[1] There is no dispute as to NAVL's compliance with the tariff-filing requirement.

written or electronic communication: "(1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money . . . ." 49 C.F.R. § 1005.2(b)  These filing regulations are strictly construed. *Salzstein*, 993 F.2d at 1189–90.

There is no dispute that NAVL has complied with the statutory and regulatory requirements to limit its liability under the Carmack Amendment.  Rather, the question is whether Williams filed a valid cargo claim with NAVL within the nine-month period, which appears to have commenced on the delivery date, August 18, 2010, and therefore ended on or about May 18, 2010.  NAVL does not contest that communications from Williams met the first two elements under § 1005.2(b).  However, NAVL asserts Williams never provided a "claim for the payment of a specified or determinable amount of money," as required by the third element of § 1005.2(b).

Williams does not dispute her failure to file a claim form with a specified or determinable amount, but instead argues NAVL is estopped from asserting the specified amount requirement, because of what she characterizes as affirmative misrepresentations from NAVL on that score.  In any event, the Court will first discuss the relevant communications which Williams did supply to NAVL within the nine-month period.

First, there is NAVL's own claim form, which Williams filled in and submitted on October 20, 2010.  This form included a column for amounts claimed, but that column was left empty. Defs.' Mot. Summ. J. [#23-13], Ex. 23.  Indeed, the form did not list the value of any items.  As such, it is not a valid cargo claim.  Second, Williams's attorney sent a demand letter on October 12, 2010, which demanded estimated total damages of $170,000.  However, an estimate does not meet the regulatory requirement. *See Salzstein*, 993 F.2d at 1190 (citing with approval *Bobst Div. of Bobst*

-6-

*Champlain, Inc. v. IML-Freight, Inc.*, 566 F. Supp. 665, 669 (S.D.N.Y. 1983) (holding estimated damages of $100,000 was insufficient to state a determinable claim under § 1005.2)); *Landess v. N. Am. Van Lines, Inc.*, 977 F. Supp. 1274, 1281 (E.D. Tex. 1997) ("[I]t appears that the rule in the Fifth Circuit is: an estimate is not specific enough for a strict compliance jurisdiction."). "'If damages are sought it is for the claimant to say exactly what it seeks, rather than for the carrier, against its self-interest, to say what the claimant deserves.'" *Salzstein*, 993 F.2d at 1190 (quoting with approval *R.T.A. Corp. v. Consol. Rail Corp.*, 594 F. Supp. 205, 210 (S.D.N.Y. 1984)). Any doubt on this score is dispelled by the relevant regulation, which provides an illuminating example of an uncertain amount: "'$100 more or less . . . .'" 49 C.F.R. § 1005.2(d). Section 1005.2(d) goes on to specify the filing of such an estimated amount does not relieve the shipper of the obligation to make a "formal claim in writing for a specified or determinable amount of money" under § 1005.2(b). *See id.*

As such, Williams has failed to file a claim form in compliance with § 1005.2(b), entitling NAVL to summary judgment, unless Williams can prevail on her estoppel claim.[2] *See Landess*, 977 F. Supp. at 1281. The Fifth Circuit discussed the contours of an estoppel claim in this specific context in *Salzstein*, 993 F.2d at 1191–92. "Estoppel . . . arises when one party has reasonably relied on the conduct or statements of another; if the relying party suffers harm as a result of this reliance, the inducing party can be estopped from disavowing his earlier conduct or statement." *Id.* at 1191.

---

[2]Williams asserts there is at least a fact issue as to which items she was required to "include[] a precise value at the time of the initial claim filing, and which did not?" Pl.'s Letter Brief at 1. This argument misses the point: § 1005.2(b) does not require Williams to state a specific amount for any items when a claim is first reported, but it does require her to provide a "specific or determinable amount" in writing for her claim at some point before the nine-month period has passed, and there is no evidence she did so.

**B.      Estoppel**

The Court finds Williams's estoppel claim fails as a matter of law, for two reasons.  First, it was not reasonable for Williams to rely on either or both of the statements and conduct she points to.  And second, even if it was initially reasonable to so rely, her reliance became unreasonable after she received NAVL's email of November 22, 2010, described below.

**1.      NAVL's Representations**

Williams alleges two misrepresentations by NAVL in support of her estoppel claim.

First, the NAVL claim form was accompanied by a list of instructions, one of which stated "You do not need to complete the 'Amount Requested' or obtain estimates for most items at this time." Pl.'s Resp. [#24-3], Ex. A ¶ 2.  Williams argues she relied on this instruction, and claims this relieves her from ever providing a specific or determinable amount.  However, the same paragraph goes on to state, "If this information becomes necessary, a representative will contact you." *Id.*  This makes it unreasonable to assume definite amounts would never be required.  Furthermore, the Fifth Circuit has expressly held that such statements, even when made by a live person, rather than a mere form, do not relieve the shipper of the obligation to provide a "specific or determinable amount" within the nine-months period.  *See Salzstein*, 993 F.2d at 1192.  Finally, the claim form was submitted relatively early in the adjustment process, before Lone Star, the restoration company, had inspected and provided restoration values for the damaged items.  Looking at the record, it is plain neither party regarded the claims process as being completed after Williams sent in the claim form

Second, Williams affirms she offered receipts and other documentation of value to Brendan Hussey of Lone Star, the restoration company, when he visited her to investigate the loss, but that

-8-

he refused these items.  NAVL argues Lone Star is an independent company, and Hussey is not an employee or agent of NAVL, and as such the refusal to accept this documentation cannot be attributed to NAVL.  The Court agrees.  Williams presents no evidence suggesting otherwise, and the deposition of Lone Star's corporate representative, Guy Endsley, clearly established that Lone Star is an independent contractor, and moreover had contracted with neither NAVL defendant, but with their corporate parent.  *See* Pl.'s Resp. [#24-15] at 5–8.

Williams also argues Lone Star may have had apparent authority.  Pl.'s Letter Brief at 3.  Even assuming this is true, it was not reasonable for Williams to presume and rely from this conduct that she was excused from making a claim for a specific amount.  In fact, it is almost irrelevant:  § 1005.2(b) does not require exhaustive documentation of individual values, rather, it simply requires a specific or determinable amount claimed.  If Lone Star's communications can be attributed to NAVL, they do not amount to an affirmative misrepresentation, sufficient under *Salzstein* to support Williams's estoppel argument.  By Williams's own account, Hussey simply told Williams it was "not necessary" for her to provide him with documents establishing the value of individual items.  Pl.'s Resp. [#24-1] at 2 (Williams Affidavit).  Hussey did not tell Williams she would *never* have to file a claim form with a specified or determinable amount, nor did he tell Williams she had beyond nine months to do so.[3]

**2.      The November 22, 2010 Email**

---

[3]Williams also suggests the receipts and other documents were part of her claim, Pl.'s Letter Brief at 1–2, but provides no evidence they were actually supplied to NAVL, or that she ever made any effort to supply them to NAVL after Hussey refused to accept them.  Moreover, the November 22, 2010 email from NAVL to Williams made clear that her claim was not complete, and that she had nine months to complete her claim.  The burden was on Williams to ensure NAVL received a valid claim within the time period to do so.

NAVL sent an email dated November 22, 2010—after Williams had read the claim form instruction, and after she spoke with Hussey—stating: "You have 9 months from the delivery date to complete your claim." Defs.' Mot. Summ. J. [#23-14], Ex. 24 at 1 (Kim Troyer email). The email specified it would be "helpful" for Williams to give amounts for lost items. *Id.* The email also noted the loss estimate from Lone Star was still pending, and final adjustment of Williams's claim would not occur until Lone Star's report was received. *Id.* Taken as a whole, this email shows NAVL was not waiving the claim filing period, and it makes it unreasonable for Williams to continue to rely on supposed prior representations regarding the necessity of providing a definite amount. This is because the gravamen of the email is that adjustment of Williams's claim was still ongoing, and she was on notice she had yet to complete her claim.

The Court finds these facts fall squarely within the situation in *Salzstein*: the November 22 email made it unreasonable for Williams to rely any further on the prior statements by NAVL and Hussey, and therefore her estoppel claim fails.

> Regardless of whether or not the [shipper]'s original reliance on the adjuster's statements was reasonable, we conclude that these letters made continued reliance unreasonable. The [shippers] were put on notice that their claim was incomplete. Consequently, the [shippers] cannot now estop [the carrier] from asserting the minimum filing requirements as a defense to their claim.

*See Salzstein*, 993 F.2d at 1192.

Accordingly, because (1) as a matter of law, it was initially unreasonable for Williams to rely on the two communications in question, and (2) alternatively, any reliance became unreasonable as a matter of law after the November 22 email from NAVL, Williams's estoppel claim fails. *See id.* NAVL's liability is therefore limited under the tariff and contract with Williams, by operation of law.

The Court GRANTS summary judgment for NAVL.  The Court will now turn, alternatively, to NAVL's motion for partial summary judgment.

## C.    Partial Summary Judgment

NAVL also argues it is entitled to partial summary judgment, limiting any recovery by Williams to the declared value of $100,000.  The Court agrees.  Every piece of objective, documentary evidence in the record shows Williams declared a total value of $100,000.  This is confirmed by the testimony of Amy Cortez, the NAVL sales representative who concluded the contact with Williams.  Williams asserts she asked for a higher value, but was told it was unavailable. Cortez denies receiving any such request. However, this is not a material fact, because even assuming Williams's account is correct, the mere fact she asked for, but was refused, a higher declared value amount does not entitle her to rewrite the written contract after the fact. And she cites no authority entitling her to demand a greater declared value amount than what the carrier was willing to offer.[4]  Rather, it is well established carriers can limit their liability with the agreement of the shipper. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415–16 (8th Cir. 1987) (superseded by statute and regulation on other grounds).  One of the requirements to do so, and the only one at issue here, is that the carrier must give the shipper "a reasonable opportunity to choose between two or more levels of liability." *Id.* at 1416.

Williams claims NAVL failed to reasonably offer her at least two different coverage amounts.  However, she cites no evidence of this, other than a conclusory assertion to that effect in

---

[4]Curiously, Cortez stated she in fact had authority to conclude contracts for declared value of up to $240,000, and potentially could go higher still, with approval from the corporate parent. Pl.'s Resp. [#24-11], Ex. 11 at 17–18.

her affidavit.  To the contrary, the very exhibit relied upon by Williams in her Reply confirms she indeed was offered a different coverage amount.  On July 16, 2010, Cortez emailed quotes to Williams, and included the following coverage offer: "If you decide to get valuation the minimum coverage suggested is $35,000.  With no deductible the price is $379, with a $250 deductible the price is $288 and with a $500 deductible the cost is $241."  Defs.' Reply [#25-1], Ex. 7, at 1.  In addition, as noted earlier, the bill of lading, which Williams signed, gave her two options: sixty cents per pound, or a declared value of either six dollars per pound, or a gross amount, whichever was greater.  Defs.' Mot. Summ. J. [#23-8], Prod. Resp. at 1.  Accordingly, the Court finds, as a matter of law, that NAVL has complied with the statutory and regulatory requirements to limit its liability, both by contract, and by operation of the Carmack Amendment, and therefore GRANTS partial summary judgment to NAVL, limiting any recovery by Williams to the $100,000 declared value.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants North American Van Lines of Texas, Inc. and North American Van Lines, Inc.'s Motion for Summary Judgment [#23] is GRANTED in all respects.

SIGNED this the __30__ day of July 2012.

_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE

409 mot summ j msj ord jih.frm